# Supreme Court of Florida

———

No. SC20-676

———

**MICHAEL D. SPEAR,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

June 16, 2022

LABARGA, J.

This case is before the Court for review of the decision of the

Fifth District Court of Appeal in *Spear v. State*, 294 So. 3d 995 (Fla.

5th DCA 2020).  In its decision, the district court certified a

question of great public importance,[1] which we rephrase as follows:

---

1.  The district court certified the following question of great public importance:

> ONCE A JUDGMENT AND SENTENCE IS FINAL, DOES A TRIAL COURT HAVE THE INHERENT AUTHORITY AT ANY TIME TO SUA SPONTE CORRECT SENTENCING DOCUMENTS THAT OVERREPORT THE AMOUNT OF JAIL TIME SERVED BY A DEFENDANT PRIOR TO SENTENCING OR THE AMOUNT OF JAIL TIME AND

DOES A TRIAL COURT HAVE THE INHERENT AUTHORITY TO SUA SPONTE CORRECT SENTENCING DOCUMENTS THAT OVERREPORT THE AMOUNT OF JAIL TIME SERVED BY A DEFENDANT PRIOR TO SENTENCING OR THE AMOUNT OF JAIL TIME AND PRISON TIME SERVED BY A DEFENDANT PRIOR TO RESENTENCING?

*Id.* at 1003.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

Because we hold that subject to the procedural constraints established by Florida Rule of Criminal Procedure 3.800(b), the trial court does have the authority to sua sponte correct such sentencing errors, we answer the rephrased certified question in the affirmative.  However, because the sentencing corrections in Spear's cases were untimely, we remand *Spear* for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

Michael Spear was convicted of three felony counts of forgery and three felony counts of uttering a forged instrument, for which he was sentenced to community control followed by drug offender

---

PRISON TIME SERVED BY A DEFENDANT PRIOR TO RESENTENCING?

- 2 -

probation.  *Spear*, 294 So. 3d at 997.  Spear subsequently violated community control by committing new law violations of felony false imprisonment and misdemeanor domestic violence battery, and the State charged him with both crimes in a separate prosecution.  *Id.*

Spear and the State reached a plea agreement to resolve the violations of community control in the forgery case and the new law violations in the false imprisonment case.  *Id.*  The trial court accepted the plea agreement and released Spear pending sentencing.  Spear's release was subject to a *Quarterman*[2] agreement, which provided that Spear would face the statutory maximum sentences for his offenses if he failed to appear at sentencing.  294 So. 3d at 997.

Spear failed to appear at sentencing and was later arrested and returned to court for sentencing.  *Id.*  At sentencing, the trial court revoked Spear's community control, adjudicated Spear guilty of the failure to appear, and found that Spear violated the *Quarterman* agreement.  *See id.*  Spear was then sentenced to the

---

2.  *Quarterman v. State*, 527 So. 2d 1380, 1382 (Fla. 1988) (holding that a trial court may depart from sentencing guidelines if the defendant violates a plea agreement to appear in court).

maximum five-year sentence for each of the six counts in the forgery case, and all sentences were to run consecutively. *See id.* The trial court awarded Spear 163 days of jail credit on the first count only. *Id.* Spear was also sentenced to the maximum five-year sentence for false imprisonment with 139 days of jail credit, and time served on the battery. *Id.* The false imprisonment sentence was to run consecutively to the sentences in the forgery case, resulting in a total of thirty-five years of imprisonment. *See id.*

Spear appealed to the Fifth District Court of Appeal, which reversed Spear's sentences and remanded for an evidentiary hearing to determine whether Spear willfully failed to comply with the *Quarterman* agreement. *See Spear v. State*, 244 So. 3d 421, 421 (Fla. 5th DCA 2018). On remand, the trial court found a willful violation and resentenced Spear in a hearing on October 4, 2018.

It is the October 2018 resentencing that is the basis for the issues before this Court.[3] As the district court explained: "Pertinent

---

3. We note that although Spear was resentenced for the same crimes, upon resentencing, the trial court ordered count six in the forgery case to run concurrently to count five, and it ordered the sentence in the false imprisonment case to run concurrently to the

- 4 -

here, after the trial court pronounced Spear's respective prison sentences, the deputy clerk then proceeded to compute Spear's jail credit in each case. While arguably unnecessary, the deputy clerk also computed Spear's prison credit." *Spear*, 294 So. 3d at 998. The clerk advised that Spear was originally given 163 days of jail credit in the forgery case, and 139 days of jail credit in the false imprisonment case. The clerk then asked whether the court was "now adding the additional 493 days [of prison credit] from the date of sentencing to today as his credit." The trial court answered, "Well, he's been in custody, yes." The public defender asked for the total amount of credit for time served; the clerk responded, "Hold on. I'm like her [the judge], I don't know math in my head." The clerk erroneously calculated the time served in the forgery case as 686 days, and in the false imprisonment case as 932 days, resulting in thirty additional days of credit for time served in the forgery case, and 300 additional days of credit for time served in the

_____

sentences in the forgery case. As a result, Spear's cumulative prison sentence was reduced from thirty-five years to twenty-five years. Here, however, our focus is the erroneous amount of credit for time served that Spear was awarded in both cases, and the trial court's subsequent attempt to fix those errors.

false imprisonment case. "The trial court did not thereafter separately announce the jail or prison credit awarded prior to entering the written sentencing documents in each case containing these incorrect credit figures . . . ." *Spear*, 294 So. 3d at 998.

The written sentencing documents did not distinguish between jail and prison credit. Rather, the documents described the entire amount of credit as "original jail credit." *Id.* In addition to the inaccurate credit totals, Spear was awarded credit for time served on all six counts in the forgery case instead of only the first count.

Two months later, in a letter dated December 7, 2018, the Florida Department of Corrections (DOC) sent a letter to the trial court advising that there were possible errors in the amount of credit for time served awarded to Spear that resulted in him being awarded too much credit. *Spear*, 294 So. 3d at 998.[4] However, before the trial court addressed the errors, the district court per curiam affirmed Spear's sentences and issued its mandate. *See Spear v. State*, 267 So. 3d 1029 (Fla. 5th DCA 2019).

---

4. The DOC letter also stated that Spear was entitled to 492 days, not 493 days of prison credit for time served.

After the mandate issued, the trial court sua sponte ordered that the judgments and sentences in Spear's cases be amended to reflect the correct amounts of credit for time served as calculated by DOC. *Spear*, 294 So. 3d at 998.

Spear appealed the amended judgments and sentences. While the district court ultimately affirmed the trial court, the district court certified a question of great public importance and certified conflict with multiple decisions from the First and Second District Courts of Appeal. *Id.* at 1003-04. Because the rephrased certified question is determinative in this case, we decline to address the certified conflict. We now turn to the rephrased certified question.

## ANALYSIS

As we begin, we emphasize that the sentencing errors in this case were avoidable. After pronouncing at the resentencing hearing that Spear would receive jail credit and prison credit on the appropriate counts, rather than defer to DOC the calculation of Spear's prison credit (as is standard practice), the clerk erroneously calculated the totals of jail and prison credit in each case. The trial court relied on those totals, resulting in sentencing documents that overreported the amount of Spear's credit for time served.

Complicating the matter even further, the sentencing documents did not distinguish between jail credit and prison credit; they erroneously combined the two into a single category of "original jail credit."

We recognize that Florida Rule of Criminal Procedure 3.801 permits a trial court to correct the underreporting of jail credit within one year after a judgment and sentence becomes final. However, the case before us involves the overreporting of credit for time served, not underreporting. Further, this case involves the correction of jail credit and prison credit. Given these distinctions, we do not rely on rule 3.801.

*Spear* concluded—and the State urges this Court to conclude—that Spear's sentences were illegal sentences subject to correction by a trial court at any time pursuant to Florida Rule of Criminal Procedure 3.800(a). However, we reject this characterization of Spear's sentences. This Court has explained that the policy behind rule 3.800(a) "includes concerns that a defendant not be subject to punishment or imprisonment beyond that which was lawfully imposed." *Williams v. State,* 957 So. 2d 600, 604 (Fla. 2007). In this case, Spear's sentences did not

subject him to imprisonment beyond that which was lawfully imposed. Instead, Spear received too much credit for time served, which, to Spear's benefit, reduced the amount of time he would serve on his sentences.

Given the facts before us, where a trial court sua sponte corrected the overreporting of jail and prison credit for time served after Spear's judgments and sentences became final, our analysis is guided by Florida Rule of Criminal Procedure 3.800(b), "Motion to Correct Sentencing Error," which provides in relevant part:

> **(b) Motion to Correct Sentencing Error.** *A motion to correct any sentencing error,* including an illegal sentence or incorrect jail credit, *may be filed as allowed by this subdivision.* This subdivision shall not be applicable to those cases in which the death sentence has been imposed and direct appeal jurisdiction is in the supreme court under article V, section 3(b)(1) of the Florida Constitution. The motion must identify the error with specificity and provide a proposed correction. A response to the motion may be filed within 15 days, either admitting or contesting the alleged error. Motions may be filed by the state under this subdivision only if the correction of the sentencing error would benefit the defendant or to correct a scrivener's error.

(Emphasis added.)

- 9 -

Rule 3.800(b) limits the time during which a motion to correct a sentencing error may be filed; it only permits the filing of a motion before an appeal has been filed or while an appeal is pending:

> (1) *Motion Before Appeal.* During the time allowed for the filing of a notice of appeal of a sentence, a defendant or the state may file a motion to correct a sentencing error. . . .

> (2) *Motion Pending Appeal.* If an appeal is pending, a defendant or the state may file in the trial court a motion to correct a sentencing error. The motion may be filed by appellate counsel and must be served before the party's first brief is served. A notice of pending motion to correct sentencing error shall be filed in the appellate court, which notice automatically shall extend the time for the filing of the brief until 10 days after the clerk of circuit court transmits the supplemental record under Florida Rule of Appellate Procedure 9.140(f)(6).

Moreover, the procedures set forth in rules 3.800(b)(1)(A)-(B) and 3.800(b)(2)(A) make clear that any rule 3.800(b) motion to correct sentencing error must be fully resolved before an appeal proceeds. Thus, the sua sponte corrections to Spear's sentencing documents, which the trial court made after Spear's appeal was over, were untimely and cannot stand.

Rule 3.800(b) expressly permits the State in certain circumstances to file a motion to correct a sentencing error, but the State did not do so in this case. In the absence of a motion by the

- 10 -

State, the trial court could only have corrected the errors on its own motion within the framework of and in compliance with rule 3.800(b). Moreover, a correction of the errors would have been appropriate only if the errors constituted scrivener's errors. Here, however, we address only the untimeliness of the trial court's corrections, which is determinative in this case.

Because Spear's sentencing documents were amended after his sentences were affirmed on appeal and became final, the trial court's sua sponte correction of the sentencing errors occurred far outside of the time frames set forth in rule 3.800(b), and the trial court did not have the authority to correct the errors.

### CONCLUSION

We answer the rephrased certified question in the affirmative and hold that subject to the procedural constraints of rule 3.800(b), a trial court has the inherent authority to sua sponte correct sentencing documents that overreport the amount of jail time served by a defendant prior to sentencing or the amount of jail time and prison time served by a defendant prior to resentencing. We quash the Fifth District's decision in *Spear*, and we remand this matter for proceedings consistent with this opinion.

It is so ordered.

POLSTON, LAWSON, MUÑIZ, and COURIEL, JJ., concur.
CANADY, C.J., concurs in result only.
GROSSHANS, J., concurs in result only with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

GROSSHANS, J., concurring in result only.

Because the trial court lacked the authority—inherent or otherwise—to make the challenged corrections after the judgments and sentences became final, I agree with the majority that the Fifth District's decision should be quashed. However, I would have answered the certified question (as originally phrased) in the negative and refrained from deciding whether a rule of criminal procedure—inapplicable to the facts before us—defined the scope of the court's inherent authority.

Accordingly, I concur in result only.

Application for Review of the Decision of the District Court of Appeal
Certified Great Public Importance/Certified Direct Conflict of Decisions

Fifth District – Case No. 5D19-1747

(Brevard County)

- 12 -

Matthew Metz, Public Defender, and Glendon George Gordon, Jr., Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida,

    for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, Rebecca Rock McGuigan, Bureau Chief, and Kaylee D. Tatman, Assistant Attorney General, Daytona Beach, Florida,

    for Respondent